**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

In re

**KEITH LEWIS BASSETT** and
**CATHRYN JANE BASSETT**,

Debtors.

Case No.  **08-61507-13**

# MEMORANDUM   OF   DECISION

At Butte in said District this 26th day of February, 2009.

Pending in this Chapter 13 case is confirmation of the Debtors' Chapter 13 Plan, filed

December 1, 2008, to which objections were filed by Valley Bank of Kalispell ("Valley Bank"),

Provident Financial, Inc. ("Provident") and Chase Home Finance, LLC ("Chase").  The hearing

on confirmation was held after due notice at Missoula on January 15, 2009, at which the parties

appeared represented by counsel.  At the conclusion of the parties' cases-in-chief the Court took

the matter under advisement.  After review of the record and applicable law, this matter is ready

for decision.  For the reasons set forth below the objections will be overruled and Debtors'

Chapter 13 Plan will be confirmed by separate Order.

Debtors were represented at the hearing by attorney Daniel S. Morgan of Missoula.

Provident and Valley Bank both were represented by attorney Daniel R. Wilson ("Wilson") of

1

Kalispell, Montana. Chase was represented by attorney Martin S. King of Missoula. Debtor

Keith Lewis Bassett ("Keith") testified. Chase's Exhibits ("Ex.") 1, 2, 3, and 4, Provident's Ex.

1, 2, and 3, and Valley Bank's Ex. 1 and 2, all were admitted into evidence without objection.

This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This

Memorandum of Decision includes this Court's findings of fact and conclusions of law pursuant

to F.R.B.P. 7052.

## FACTS

Keith and Cathryn Bassett ("Cathryn") (together "Bassetts" or "Debtors") are married and

live in a residence in Kila, Montana. Chase has a first lien against Debtors' residence based on a

promissory note dated September 7, 1993, in the amount of $88,065.00, Chase's Ex. 1, secured

by a deed of trust, Chase's Ex. 2[1]. Keith admitted under cross examination that the note to Chase

had a 30 year term and required monthly payments, and that they have not made a payment to

Chase since August 2008, or paid the property taxes or insurance. He testified that Chase has

paid for the taxes and insurance on their residence.

Bassetts formerly were involved in the business of making and selling jewelry. Keith

testified he has 27 years experience in the jewelry business, but that now they own and operate a

restaurant doing business  as the "Cottage Inn, LLC[2]." Bassetts purchased the Cottage Inn, which

had been closed for 5 years, using Cathryn's inheritance and proceeds from the sale of her

---

[1]Montana Mortgage Company is named as the lender on Chase's Ex. 1 and 2. Ex. 1 states it is payable to the order of Chemical Bank. There is no assignment shown in the record of the note to Chase, but no objection has been filed to allowance of Chase's claim.

[2]The Cottage Inn, LLC, was originally named as a dba in the Debtors' Chapter 13 case.

2

father's house.  Keith testified that the Cottage Inn was a "biker bar" when they purchased it, in a deteriorated condition and had poor reputation in the community.  He testified that they also own a couple of acres of bare land across the highway from the Cottage Inn, on which they built a road, installed a well and septic system and created an easement for use of the bare land by the Cottage Inn.

Keith testified that Bassetts spent nine months renovating and changing the biker bar into the Cottage Inn, and that now it is considered people friendly and important to the small community of Kila.  Bassetts formed an LLC, named "Cottage Inn, LLC" to operate the Cottage Inn.  Keith testified that they purchased a county liquor license for the sum of $400, which they purchased from the Montana Department of Revenue with funds of the Cottage Inn, LLC, and which he stated is the liquor license's current value.  He testified that liquor licenses within the city limits of Kalispell are worth up to $1 million, and that their liquor license may be worth far more if the Kalispell city limits expand 1 mile to encompass the Cottage Inn.

Keith testified that they had planned to spend between $600,000 to $700,000 on the renovations of the Cottage Inn and use the rest of their money to transition to their new operations.  However, they experienced problems with contractors and cost overruns and their funds were consumed by the renovation.  In all, Keith testified, Bassetts spent almost $1.5 million to acquire and renovate the Cottage Inn, including building the road, and water and septic system under the highway on the bare land.

Keith testified that they first went to Valley Bank, with which they had a 20 year relationship, for financing.  On August 14, 2006, Bassetts signed a promissory note in the amount of $166,690.00 payable to Valley Bank, and signed a deed of trust granting Valley Bank a lien on

3

their residence to secure the note. Valley Bank's Ex. 2. Valley Bank has a second priority lien on Bassetts' residence after Chase's first lien..

Bassetts also took out two loans from Provident, the second after Provident asked for a lien against their home. Keith testified that Provident has a first lien position against the Cottage Inn, which he valued at $700,000, and a third lien position against their residence which he valued at $430,000. Provident's Ex. 2 includes the promissory note to Provident dated February 19, 2008, in the amount of $417,000, a business loan agreement and a deed of trust, including legal descriptions titled Exhibit A and Exhibit B which describe Provident's security as both Debtors' homestead on Exhibit A and two separate tracts of land from two different certificates of survey on Exhibit B[3], all comprising Provident's security, dated February 19, 2008. Keith testified that he was unaware that Provident was secured by a lien on the bare land across U.S. Highway 2, but that in that instance Provident's equity position was improved.

Keith testified that they listed the Cottage Inn for sale for more than a year, but received no offers at the $1.5 million listing price. He testified that the Cottage Inn is not limited solely for use as a restaurant, but also has five office spaces, a meeting room and a gallery upstairs. He testified that the restaurant was a new addition in their renovation, and that it is compact, well designed and is useful for any purpose[4], but he agreed on cross examination that its highest and best use is as a restaurant.

---

[3]Both tracts of land on Exhibit B to Provident's Ex. 2 are tracts of land in Government Lot 8 in Section 5, Township 27 North, Range 22 West, P.M.M. Flathead County, Montana. One Tract is named "Tract 1 of Certificate of Survey No. 16565". The second Tract is named "Tract 1 of Certificate of Survey No. 17369".

[4]He testified that they chose not to include gambling, but that a buyer of the Cottage Inn would be able to introduce gambling.

Debtors filed their voluntary Chapter 13 Petition on October 29, 2008. Keith testified that they have not filed any prior bankruptcies and are not involved in state court litigation, but they did not know that the economy would collapse. Debtors listed the Cottage Inn, LLC, as a dba on their petition. The Chapter 13 Trustee filed a motion to dismiss the Cottage Inn, LLC, as an ineligible co-debtor, which was granted and the LLC was dismissed.

On November 25, 2008, Debtors applied for approval of employment of a realtor, Orlin Gravelle of Prudential Glacier Real Estate, to market and sell their residence and their commercial property, including the liquor license, and both applications were approved the following day. They renewed their listing agreement with the realtor in December 2008. Keith testified that they have not listed the bare land across U.S. Highway 2 for sale, but that they could. Keith testified that they separated the bare land in order to reduce the price of the Cottage Inn for a buyer, which could still use the bare land by means of an easement.

Debtors filed their Schedules, Statement of Financial Affairs ("SOFA")[5] and Chapter 13 Plan on December 1, 2008. Schedule A lists three parcels of real estate: Debtors' homestead, the Cottage Inn, and 1.14 acres of bare land across U.S. Highway 2 West from the Cottage Inn in Kila. Debtors listed the homestead[6] on Schedule A with a current value of $430,000.00, and secured claims against it in the sum of $614,603. The Cottage Inn[7] is listed at a current value of $700,000.00 securing a claim in the amount of $417,000. The 1.14 acres of bare land[8] across

[5]The Schedules and SOFA were admitted as Chase's Ex. 1.

[6]The homestead's address is listed a 280 Tranquil Valley Trail, f/k/a 435 Springhill Rd.

[7]The address of the Cottage Inn is 4220 US Hwy 2 W in Kila.

[8]The address of the bare land is listed as 4252 U.S. Hwy 2 W.

5

U.S. Highway 2 is listed at a current value of $195,000, with no secured claim shown. Keith testified that he was not aware the bare land was encumbered by a lien, but he did not dispute, when shown Provident's deed of trust, that the bare land was subject to Provident's lien.

Schedule B lists Debtors' personal property, including at item no. 13 ("Stock and interests in incorporated and unincorporated businesses") the Debtors' joint interest in The Cottage Inn, LLC with "no net value" and $0.00 stated as current value of Debtors' interest. Keith testified, however, that the LLC has way more assets than debts and is solvent. The liquor license is not separately listed on Schedule B, but Keith repeatedly denied that Debtors intended to hide the liquor license. He testified that they intended to include the liquor license with the Cottage Inn.

Schedule D lists Chase as a creditor with a first mortgage on Debtors' homestead securing a claim in the amount of $64,603.00; Provident with first and third deeds of trust on Debtors' commercial real property and home, respectively, with a total value stated at $1,130,000.00, and a secured claim in the amount of $417,000.00; and Valley Bank with a second mortgage on Debtors' home in the amount of $161,453.45.

Schedule E lists priority tax claims owed to the IRS and Montana DOR in the total amount of $18,800.10. Schedule F lists unsecured claims totaling $83,573.84, most of which are debts related to the Cottage Inn, which is named on Schedule H as a codebtor for all business debt.

Schedule I lists both Debtors' occupations as "Restauranteur" at the Cottage Inn for 2.5 years, and their only income is listed at line no. 8, "Income from Real Property" in the total

6

amount of $1,025[9].  Keith testified that Debtors have regular income from renting space in the Cottage Inn for two tenants, one which pays $675 per month and the second which pays $300 per month.  In addition Keith testified that Debtors have occasional income from sales of jewelry which is separate from income from the Cottage Inn.

Schedule J lists monthly expenses totaling $827.00, which includes nothing for mortgage payments, real estate taxes or insurance, and monthly net income in the amount of $198.00.  It also includes none of the expenses for the Cottage Inn, LLC, operations, which Keith testified the LLC pays.  He testified that their electricity and heating bill probably exceeds the $148 listed on Schedule J, but that the Cottage Inn pays for its own utilities and they are not listed on Debtors' Schedules.  Keith confirmed that Debtors pay $29 per month for cable.  He testified that their food bill is almost certainly more than the $100 per month listed on Schedule J but was less because the restaurant pays for food, and that their water and sewer bill is only $25 per month because they have their own well and septic system.

The SOFA at item 1 lists $0.00 in income for both Debtors in 2006 and 2007, and $3,075 in estimated rental income in 2008.  Item 2 lists a $90,000 inheritance in 2007 as income other than from employment or operation of a business.

Debtors filed their Form B22C on December 1, 2008, stating that their disposable income is not determined under 11 U.S.C. § 1325(b)(3) because their current monthly income was not more than the median family income at lines 21, 22, and 23 of Part III.

Debtors' Chapter 13 Plan proposes monthly payments in the amount of $200.00 for 24

---

[9]The total is broken down at line 8 to $300.00 to one Debtor and $675.00 to the other, with another $50 listed at line 7 as regular income from operation of a business.  No detailed statement of the $50 regular income is attached.

months or until the provisions of the Plan are completed.  On cross examination by Chase's attorney Keith was asked about the $2 monthly shortfall in their net income, and he responded that the Debtors do not take a salary and can make up the $2 per month to make the plan payment.  On redirect examination Keith repeated that they can scrape up an extra $2 per month. He testified that the Debtors have made all plan payments to date and that they will have no problem making their plan payments during the plan term from rentals, and the value of the properties.

Their Plan further provides:

Upon the sale or refinance of Debtors' real estate in Flathead County (either residential or commercial), Debtors will turnover sufficient proceeds for payment of the allowed administrative, secured and unsecured claims in full, plus interest as stated below.  If the property does not sell before October 29, 2010, the Trustee may liquidate the property himself through a court-approved process, or convert the case to Chapter 7.

Keith testified that their Plan does not propose to sell the parcel of bare land across U.S. Highway because the market reaction to the listing price of $1.5 million for the Cottage Inn and the bare land was that it was too high, so the Debtors separated the properties to offer the Cottage Inn at a lower price.  He testified that Debtors used a 2 year plan term because he thought they would require that much time, but that hopefully they could sell the Cottage Inn in less than 2 years.

Paragraph 2(b) of Debtors' Plan provides, in pertinent part, for payment of the secured claims of Chase, Provident and Valley Bank by the Chapter 13 Trustee as follows:

Neither the Trustee nor the Debtors shall make any interim payments to Chase Home Finance, Provident Financial, Flathead County Treasurer, or Valley Bank of Kalispell (hereinafter the Impaired Creditors) during the plan term.  At the closing of the sale of Debtors' real estate in Flathead County, the Impaired Creditors will

8

be paid all sums due and owing pursuant to their claims.  Before the closing of the sale of either parcel of real property, Debtors will obtain payoff figures from the Trustee and authorize the closing agent to deliver sufficient funds to the Trustee for payment of any valid proof of claim held by the Impaired Creditors.  The Trustee will present Debtors' closing agent with payoff amounts for a preliminary Settlement Statement which will then be submitted for the Court's approval before closing.

On cross examination Keith testified that Debtors have made no payments to Chase postpetition.  However, he testified that if their restaurant business improves and generates income the Debtors could resume making payments to Chase.

At paragraph 2(g) the Plan provides that the total amount distributed will be sufficient to pay all allowed unsecured claims in full, with interest, which should not exceed $85,000.  Keith testified that Debtors' Plan is a full payment plan and that Provident will be paid the allowed amount of its claim, but the sale is hindered by the current uncertainty in the market.  He testified that the Debtors will not pay for insurance on the Cottage Inn and that Provident and Valley Bank will have to pay for insurance.  The Chapter 13 Trustee filed objections to confirmation, but withdrew his objection and consented to confirmation on December 19, 2008 (Docket No. 26).  Keith testified that the Trustee looked at the Debtors' ledger and balance sheet prior to consenting to confirmation.

Despite the Plan's provision for full payment of their claims, Provident filed an objection to confirmation contending that the Debtors' Plan fails to satisfy 11 U.S.C. § 1325(a)(5)(B)(ii) and is not filed in good faith.  Valley Bank filed an objection to confirmation contending that the Plan is not filed in good faith, is not feasible, violates 11 U.S.C. § 1322(b)(2) by modifying the rights of a holder of a secured claim which is secured only by a security interest in the Debtors' principal residence, and fails to satisfy the disposable income requirements of "11 U.S.C. §

9

1325(b)(ii)."  Chase filed similar objections to Provident's and Valley Bank's, plus Chase objects that the Debtors are not individuals with regular income and thus do not qualify as debtors under chapter 13 under 11 U.S.C. § 109(e).

Chase filed Proof of Claim No. 8 on December 9, 2008, Chase's Ex. 3, stating its claim in the amount of $64,979.81, including NSF fees and late charges and the unpaid principal balance in the sum of $64,178.54.  Ex. 3 fails to state the per diem interest as required by Mont. LBR 3001-3.  The deed of trust between Debtors and Montana Mortgage Company dated September 7, 1993, Chase's Ex. 2, is attached to Claim No. 8.  Chase's Ex. 2 describes the security as Lot 10, Smith Lake Vista, Unit No. 1, according to the plat thereof on file in the office of the Clerk and Recorder of Flathead County, Montana, with the address of 435 Springhill Road in Kila, which is the former address of Debtors' homestead listed on Schedule D.  Chase's Ex. 1, the promissory note, also is attached to Claim No. 8.

Provident filed Proof of Claim No. 10, Provident's Ex. 1, in the amount of $399,987.08, secured by property valued at $1,130,000.00, and an annual interest rate of 12 percent (12%). The attachments to Claim No. 10, Provident's Ex. 2, show per diem interest at the rate of $131.03l; the promissory note dated February 19, 2008, to Provident in the principal amount of $417,000.00, with legal descriptions titled Exhibit A and Exhibit B which describe Provident's security as both Debtors' homestead on Exhibit A and two separate tracts of land from two different certificates of survey on Exhibit B[10]; and the business loan agreement and deed of trust

---

[10]Both tracts of land on Exhibit B to Provident's Ex. 2 are tracts of land in Government Lot 8 in Section 5, Township 27 North, Range 22 West, P.M.M.  Flathead County, Montana. One Tract is named "Tract 1 of Certificate of Survey No. 16565".  The second Tract is named "Tract 1 of Certificate of Survey No. 17369".

describing Provident's security, dated February 19, 2008. Keith testified that Provident's Ex. 2 included a balloon payment due February 19, 2009, and provides that after a default the interest rate may be increased by 6 percent, of which he had not been aware. He testified that those increases were not figured into Debtors' Plan, but the Plan provides that the creditors' claims will be paid off. He also testified that Provident's loan includes an insurance reserve in the amount of $48,000.

Valley Bank's Ex. 1 is its Proof of Claim No. 11, filed on December 31, 2008, in the amount of $163,889, secured by property valued on Claim No. 11 in the amount of $430,000.00 at 9% annual interest. Valley Bank's Ex. 2 includes the attachments to Claim No. 11 stating per diem interest at $40.89 and late charges at $86.00 per month, and the promissory note and deed of trust executed by Bassetts to Valley Bank as lender dated August 2006, with Bassetts' homestead described in the deed of trust.

Keith testified that the interest accruing to Provident after the 2-year plan term would total approximately $96,000, increasing its claim to about $500,000. Keith testified that the other two loans against Debtors' residence owed to Chase ($65,000) and Valley Bank ($164,000) total approximately $230,000 and are secured by their residence valued at $430,000. He testified that Valley Bank's claim would accrue additional interest during the 2-year plan term of approximately $30,000 for a payoff of approximately $194,000, while Chase's claim would accrue additional interest totaling $10,000 for a payoff of approximately $75,000, leaving $160,000 in excess equity in Debtors' residence after paying off Chase and Valley Bank. Provident, Valley Bank and Chase did not offer testimony from any witness which refuted Keith's testimony.

11

Keith testified that the Cottage Inn's business is showing growth, and that they have at least one party in Kila who is interested in purchasing it and is searching for financing. He testified that the main value of the Cottage Inn is its location on the highway, with thousands of cars passing by, plus the potential of a dramatic escalation in the value of the liquor license if it becomes part of Kalispell, and its listing price of $895,000 for a property into which they invested $1.5 million. The Debtors have not had the Cottage Inn appraised, but Keith testified they had their home appraised. No appraisals were admitted.

Keith agreed with Provident's counsel Wilson that if Debtors' property was liquidated on the date of the confirmation hearing that their secured creditors would be paid in full from the proceeds. Keith disagreed with Wilson's suggestion that he cannot guarantee that they will be paid in full after 2 years, insisting that they will be paid in full although he agreed that it was speculative both ways. Keith testified that he has no intention of his creditors bearing a loss.

## DISCUSSION

Provident, Valley Bank and Chase object to confirmation on several grounds. It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *(Barnes v. Barnes) In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Tuss*, 360 B.R. 684, 690 (Bankr. D. Mont. 2007); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added). Section 1325(a)(1) requires confirmation of a plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Therefore, the Debtors have the

12

burden of proof on all elements of confirmation. *Meyer v. Hill*, *(In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001). This Court considers the Chapter 13 Trustee's consent to confirmation as significant weight on the side of Debtors' burden of proof favoring confirmation.

### A. Eligibility – § 109(e).

Chase objects that Debtors are not individuals with regular income and not eligible for relief under 11 U.S.C. § 109(e) which provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 may be a debtor under chapter 13 of this title.

"Individual with regular income" is defined at § 101(30), which provides: "'[I]ndividual with regular income' means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title . . . ." The definition of regular income is broad, but does have limitations. *In re Hanlin*, 211 B.R. 147, 148 (Bankr. W.D. N.Y. 1997). "Regular income" under 11 U.S.C. § 109(e) may include welfare, pension, social security, and exempt property. *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 797 (9th Cir. BAP 1995).

Debtors' Schedule I shows regular income from rentals at the Cottage Inn, plus $50 from operation of the business. Keith verified the rental income and business income in his sworn testimony, and no evidence to the contrary exists in the record. Based on Keith's uncontroverted testimony and Debtors' Schedule I, the Court finds that Chase's objection based on § 109(e) is

without merit and that the Debtors are eligible under § 109(e) and § 101(30) as individuals with regular income.

### B. 1325(b)(ii).

Valley Bank objects to confirmation based upon § 1325(b)(ii), contending without explanation that the Debtors' Plan fails to satisfy § 1325(b)(ii). There is no § 1325(b)(ii) in the Bankruptcy Code. There is a § 1325(b)(2) which provides:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*Tuss*, 360 B.R. at 691.

Debtors' Form B22C states that the Debtors are below-median income, and therefore pursuant to § 1325(b)(3) their disposable income is not subject to the means test of 11 U.S.C. § 707(b)(2). Debtors' plan payment of $200 per month exceeds their net income shown on Schedule J. Valley Bank failed to offer any evidence to show that the Debtors have greater disposable income than what they show in their Schedule I. Based on the Debtors' Schedule J,

14

Form B22C and Plan, and given the Chapter 13 Trustee's consent to confirmation, the Court

finds that Valley Bank's objection based on § 1325(b)(ii) is without merit.

### C.   1325(a)(5)(B)(ii).

Provident and Chase object to confirmation contending the Debtors' Plan fails the

requirements of § 1325(a)(5)(B)(ii) which provides that, with respect to each allowed secured

claim provided for by the plan, "the value, as of the effective date of the plan, of property to be

distributed under the plan on account of such claim is not less than the allowed amount of such

claim."  Under this section a Chapter 13 plan must provide for payments to secured creditors

totaling no less than the present value of the secured creditors' claims.  *In re Hungerford*, 19

Mont. B.R. 103, 111 (Bankr. D. Mont. 2001).  The Ninth Circuit Bankruptcy Appellate Panel

noted in *Trejos v. VW Credit, Inc., et al. (In re Trejos)*, 374 B.R. 210, 220 n.9 (9th Cir. BAP

2007):

> The text of § 1325(a)(5)(B)(ii) did not change under 9 BAPCPA[11].  The phrase "as
> of the effective date" previously was recognized to require an interest component
> be paid so as to ensure that the creditor receive the present value of its claim.  The
> Supreme Court addressed the calculation of present value interest under §
> 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158
> L.Ed.2d 787 (2004), and set "prime plus" as the proper method for determining
> the interest rate that would provide present value.  Most courts that have
> considered the issue have held that, since § 1325(a)(5)(B)(ii) remains unchanged
> under BAPCPA, *Till* remains value under BAPCPA.  Because the issue is not
> before us in this appeal, we save it for another day.

The Debtors' Plan in the instant case does not propose a "cram down" of interest rate, and

does not seek to cram down the valuation of the creditors' security under 11 U.S.C. § 506(a) and

§ 1325(a)(5)(B)(ii) as discussed in *Hungerford*, 19 Mont. B.R. at 111-16.  Instead, the Plan

---

[11]Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109-8)
("BAPCPA").

15

provides at paragraph 2(b) that Provident, Chase and Valley Bank "will be paid all sums due and owing pursuant to their claims" at the closing of the sale of Debtors' real estate.  To date the Debtors have not filed an objection to any of the Proofs of Claims filed by Provident, Chase and Valley Bank.  Thus, under paragraphs 1 and 2(a) of Debtors' Plan they are obligated to pay the allowed claims of Provident, Chase and Valley Bank in full, according to the interest rates and other provisions of their respective loan documents and deeds of trust.  Although Provident and Chase object on the basis of § 1325(a)(5)(B)(ii), their objection lacks sufficient specificity to give notice that they object on the basis that the Debtors' Plan does not provide for the proper interest rate to determine the present value of their claims based on "prime plus" interest.  Given the lack of specificity, Debtors' Plan's provision for payment of  their claims for payment in full, with interest, the Chapter 13 Trustee's consent and absence of any evidence to the contrary, the Court finds that the Debtors' Plan provides for payments to secured creditors totaling no less than the present value of their claims, and therefore that the Plan satisfies § 1325(a)(5)(B)(ii).

*Hungerford*, 19 Mont. B.R. at 110.

### D.  1325(a)(6) – Feasibility.

Valley Bank and Chase object to confirmation contending that Debtors' Plan is not feasible.  Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan."

Debtors have the burden of proving that their Plan has a reasonable chance of success. *Hungerford*, 19 Mont. B.R. at 117; *In re Schaak*, 17 Mont. B.R. 349, 357 (Bankr. D. Mont. 1999) (Chapter 12 feasibility test).  In *Hungerford* the Court noted that in a Chapter 11 case a bare proposal to pay upon the sale of property does not necessarily satisfy the feasibility requirement

16

of § 1129(a)(11) as a matter of law.  19 Mont. B.R. at 117, citing *In re Thomas*, 241 F.3d 959, 963 (8th Cir. Ark. 2001).  However, the court in *Thomas* recognized that "drop dead" provisions are entitled to be considered by a bankruptcy court when evaluating a plan's prospects for success.  241 F.3d at 963.

Debtors' Plan has a "drop dead" provision in paragraph 1, which allows the Trustee to liquidate the Debtors' real estate in Flathead County "(either residential or commercial)" himself through a court approved process, or else convert the case to Chapter 7 if the Debtors' property does not sell before October 29, 2010.  The inclusion of the "drop dead" provision in Debtor's Plan weighs in favor of a finding of feasibility.

Debtors' plan payment is $200, which exceeds their excess income of $198 shown on Schedule J by $2.  Keith testified that the Debtors have made all plan payments to date, and that they will be able to scrape up another $2 per month to make the plan payment.  His testimony is uncontroverted and the Court finds that the Debtors will be able to make the monthly $200 payments.

Section 1322(b)(8) allows a plan to be partially funded through the sale of property of the estate or property of a debtor, but issues of good faith, feasibility and adequate protection arise when a plan proposes only token monthly payments to the secured creditor.  *In re Lindsey*, 183 B.R. 624, 627 (Bankr. D. Idaho 1995).  The Debtors' Plan in the instant case proposes no monthly payments on the secured claims, so the Debtors have the burden to produce evidence as to past marketing efforts, the state of the market for the subject asset, current sale prospects, the existence and maintenance of the market for the subject asset, the existence and maintenance of any equity cushion, and all other circumstances that bear on whether the creditor will see its way

out of the case financially whole. *Lindsey*, 183 B.R. at 627, quoting *In re Newton*, 161 B.R. 207, 217-18 (Bankr. D. Minn. 1993).

*In re Gavia*, 24 B.R. 573, 574 (9th Cir. BAP 1982), the BAP affirmed the bankruptcy court's finding that debtors failed to satisfy the feasibility requirement.  However, *Gavia* is distinguishable factually from the instant case because the Gavias had a limited equity of only $8,000 to pay all their creditors, whose debt almost equaled their equity and which they proposed to pay in full, and no evidence existed that Gavias had contacted a realtor, placed the home on the market or had any contact with any potential purchasers.  24 B.R. at 574.  By contrast, in the instant case the Debtors have listed both their home and the Cottage Inn for sale.  They have filed applications for employment of a realtor to sell both their home and the Cottage Inn.  They have lowered the price and even split off the bare land from the commercial property in order to make the Cottage Inn more marketable.  Keith testified that hey have an interested buyer searching for financing to purchase the Cottage Inn.  His testimony is uncontroverted.

Sale prospects for real estate generally at the time of the hearing in Flathead County are poor, and the entire nation is at present in a recession.  However, no facts exists in the record to establish that sale prospects will remain poor through October 29, 2010, the Plan's "drop dead" date, especially where the evidence shows that interest exists in the property.

On the issue of equity cushion, Keith testified that Chase would incur interest during the full plan term of approximately $10,000 for a payoff in the amount of approximately $75,000.  His testimony is uncontroverted.  Chase's Ex. 4 shows it secured by Debtors' residence valued at $430,000.  Thus Chase enjoys an equity cushion as of the drop dead date of at least $355,000, which the Court finds constitutes adequate protection.

Keith testified that Valley Bank will accrue interest of approximately $30,000 for the entire plan term, with a payoff amount on the drop dead date of $194,000. His testimony is uncontroverted. Valley Bank's Ex. 2 states the value of Valley Bank's collateral securing its second lien in the amount of $430,000. Allowing for the full amount of Chase's claim on the drop dead date of $75,000, Valley Bank has an equity cushion on the drop dead date in the amount of $161,000, which this Court finds is adequate protection for Valley Bank, even though it is required to pay for insurance.

Provident has not objected on grounds of feasibility. Nevertheless the Court notes Keith's testimony, which is uncontroverted and corroborated by Provident's objection (Docket No. 27), that Provident's claim will accrue $100,000 in interest over 2 years' time to the drop dead date making its payoff according to Provident's Ex. 2 just under $500,000. Provident objects that Debtors overstate the value of its collateral, but Provident's Ex. 1 states the value of its collateral as $1,130,000, including a first lien against the Cottage Inn and bare land, and a third lien against the residence which is above shown to have up to $161,000 in equity cushion securing Provident's third lien. The $895,000 listing price for the Cottage Inn, by itself, if realized would provide more than sufficient funds to pay Provident in full and so would the $700,000 value of the Cottage Inn listed in Debtors' Schedule A be enough to pay Provident's $500,000 claim in full on the drop dead date, even if Provident must pay for insurance and taxes. Provident objects that Debtors' valuation is overstated, but Provident offered no expert opinion on valuation to support its objection, and the Debtor's estimate of value can be acceptable. *Hungerford*, 19 Mont. B.R. at 118.

Summarizing feasibility, the Debtors' marketing efforts, current sale prospects, good

19

location of the Cottage Inn, and substantial equity cushion throughout the case weigh in favor of a finding that the Debtors' Plan is feasible under *Lindsey*, 183 B.R. at 627 (quoting *Newton),* while Debtors' lack of monthly payments to the secured creditors, failure to pay insurance and taxes, and depressed state of the market for the subject asset weigh against.  On balance, the Court finds that the Debtors have satisfied their burden under § 1325(a)(6) that they will be able to make their monthly payments under the plan and to comply with the Plan, and that because of the "drop dead" clause in their Plan and substantial equity cushion for all three secured creditors they have shown that creditors will see their way out of the case financially whole.

### E.  § 1322(b)(2) – "Cure-by-Sale."

Valley Bank and Chase object to confirmation on the grounds the Debtors' Plan violates 11 U.S.C. § 1322(b)(2) by modifying the rights of holders of secured claims which are secured only by a security interest in the Debtors' principal residence.

The Debtors' Plan provides for a "cure-by-sale" of Debtors' default to Chase and Valley Bank, which this Court decided may satisfy the confirmation requirements of 11 U.S.C. § 1322(b)(3), (b)(5)[12] & (c)(1)[13].  *In re Siegfried*, 16 Mont. B.R. 289, 301 (Bankr. D. Mont. 1997). The United States District Court for the District of Montana has held that a debtor's default may be cured by sale of a residence as in *Siegfried.  In re Murphy-Reiner*, 19 Mont. B.R. 141, 143-44 (D. Mont. 2001).

---

[12]"[A] plan may provide for the curing of a default within a reasonable time. § 1322(b)(5)."  *In re Dunn*, __ B.R. __, 2009 WL 205362, * 2 (Bankr. W.D. Wash. Jan. 23, 2009).

[13]Section 1322(c)(1) provides: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law – (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) or subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law".

As in *Siegfried*, the Debtors' Plan provides for the payment in full of Valley Bank's and Chase's allowed claims, including interest, through the sale of their security. *Siegfried*, 16 Mont. B.R. at 302. The Debtors' "drop dead" date is a year shorter than the 3 year term in *Siegfried*, and their $200 plan payment is $60 more than in *Siegfried*. *Id.* at 291, 302. During the term of the Plan the record shows that Valley Bank, Chase, and Provident are provided adequate protection through a substantial equity cushion over and above the allowed secured claims by the value of the Debtors' residence and, in Provident's case, commercial property at the Cottage Inn and bare land across the highway. Finally, as in *Siegfried* the Debtors have applied for and were granted approval of employment of a realtor. 16 Mont. B.R. at 301.

Based upon the above, this Court concludes that the Debtors' Plan satisfies the requirements set forth in *Siegfried* and *Murphy-Reiner* for cure-by-sale of Debtors' defaults under their loans from Valley Bank and Chase.

### F. 1325(a)(3) – Good Faith.

Chase, Valley Bank and Provident all object that Debtors' Plan is not proposed in good faith. Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law." To determine whether a plan has been proposed in bad faith the Court must review the "totality of the circumstances". *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224-25 (9th Cir. 1999); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994); *In re Gress*, 257 B.R. 563, 567, 18 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000). In *Leavitt*, the Ninth Circuit held that in determining whether a Chapter 13 plan is proposed in good faith, a bankruptcy court should consider (1) whether debtors misrepresented facts in their plan or unfairly manipulated the Code, (2) the debtors' history of filings and dismissals, (3) whether the

21

debtors intended to defeat state court litigation, and (4) whether egregious behavior is present. *Leavitt*, 171 F.3d at 1224-25 (9th Cir. 1999); *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 114 (9th Cir. BAP 2000).

Keith testified that Debtors have not filed any prior bankruptcy cases, and are not involved in state court litigation. Provident objects that the Debtors failed to list the value of the liquor license in their Schedules. However, Keith testified that the liquor license was paid for with funds from the Cottage Inn, LLC, and Debtors listed their interest in the Cottage Inn, LLC, in their Schedules and even on their petition until the Trustee moved to dismiss the ineligible co-debtor. The only evidence on the liquor license is that it is worth $400. The Court finds insufficient evidence to find that Debtors misrepresented facts in their Plan or Schedules, or that they unfairly manipulated the Code. No evidence exists in the record of egregious behavior by the Debtors. In sum, after reviewing the totality of the circumstances the Court finds and concludes that the Debtors satisfied their burden under § 1325(a)(3) of showing that they proposed their Plan in good faith and not by any means forbidden by law.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 13 case under 28 U.S.C. § 1334(a).

2. Confirmation of Debtors' Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

3. The Debtors are individuals with regular income eligible for relief under 11 U.S.C. § 109(e) and 11 U.S.C. § 101(30).

4. The Debtors satisfied their burden of proof on all elements of confirmation set forth at 11 U.S.C. § 1325. *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir. 1994); *Meyer v. Hill, (In re Hill)*, 268 B.R. 548, 552 (9th Cir. BAP 2001).

22

**IT IS ORDERED** separate Orders shall be entered in conformity with the above overruling the objections to confirmation filed by Provident Financial, Inc., Valley Bank of Kalispell and Chase Home Finance, LLC; and confirming Debtors' Chapter 13 Plan filed on December 1, 2008.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana